U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 MAR 11  PM 3:00

CLERK

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT ALLEN LATTERELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| ) | |
| v.  ) | Case No. 5:14-cv-00008 |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**
**(Docs. 12 & 13)**

Plaintiff Scott Latterell seeks reversal and remand of the Commissioner of Social Security's denial of his application for disability insurance benefits. *See* 42 U.S.C. § 405(g). Before the court are Latterell's motion to reverse the Commissioner's decision (Doc. 12) and the Commissioner's motion to affirm the decision (Doc. 13).

**I.      Background**

Latterell was forty-three years old on his alleged disability onset date of October 6, 2008 and is currently forty-nine. (AR 494.) He obtained a GED in the early 1990s. (AR 1688.) He has previously worked as a welder assembler, a piano technician, a furniture refinisher, and an automobile repairman. (AR 494.) He was formerly married and had two children including a son who died in 2010. (AR 99, 1668.) He lives with his sister and brother-in-law. (AR 31.)

Latterell suffers from lower back pain. He testified that he has experienced back problems since he was in his twenties and the pain has worsened over the years. (AR 27.) In April 2006, he underwent surgery in the form of an L4-L5 hemilaminectomy and microdiscectomy. (AR 9.) He worked as a welder assembler until October 2008, when he stopped working due to back pain. (AR 27-28.)

1

At the 2010 hearing Latterell testified that due to his back pain, he needed to alternate between sitting and standing and needed to lie down two to three times a day. (AR 30.) During a typical day, he would watch television and "maybe go for a short walk." (AR 31.) He reported that he could prepare his own meals and do laundry, although he testified that his sister and brother-in-law took care of all chores around the house. (AR 31, 146.) He used to go fishing with his son several times a year but stopped going after his son died. (AR 38.)

Latterell has diabetes mellitus for which he requires insulin. (AR 1676.) He has had trouble managing his diabetes over the years and has experienced several hypoglycemic episodes, although there have been fewer such episodes since he stopped drinking. (AR 491.) Latterell has a significant history of alcohol abuse and has had at least eight DUIs. He is currently sober. (AR 34-35, 484.) Latterell has also experienced episodes of depression and anxiety since the death of his son. (AR 487.)

Latterell was incarcerated at Northwest Correctional Facility in Swanton, Vermont in September 2011 on a DUI charge. (AR 1670.) At the time of the May 2013 hearing in this matter, he was still incarcerated. He testified that he initially worked in the kitchen but eventually secured an easier job as a cleaner. In that position, he works about one hour a day cleaning offices, emptying trash cans, sweeping and mopping. (AR 1675.)

## II. Procedural History

Latterell filed for supplemental security insurance and disability insurance benefits on May 28, 2009. (AR 98, 100.) His application was denied initially and on reconsideration. (AR 40, 44.) Following a hearing, Administrative Law Judge (ALJ) Edward Hoban issued a decision on October 28, 2010 finding that Latterell was not disabled. (AR 15.) Latterell appealed to this court, and the parties agreed to a voluntary remand for further proceedings. (AR 524-31.) While his appeal was pending, Latterell filed new applications for benefits which were consolidated into Latterell's original applications. (AR 481.)

ALJ Ruth Kleinfeld held a second hearing on May 8, 2013, at which Latterell appeared with his representative. The ALJ heard testimony from Latterell and a vocational expert. (AR 1667-1704.) On September 10, 2013, the ALJ issued a decision finding that Latterell was not disabled. (AR 495.) This appeal followed.

### III.     The ALJ's Decision

The Commissioner uses a five-step sequential process to decide whether an individual is disabled. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines if the individual is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If not, the ALJ then considers whether the individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or is expected to last continuously for at least twelve months. *Id.* §§ 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). At the third step, the ALJ considers whether the individual has an impairment that "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. *Id.* §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual is presumed to be disabled if he or she has a listed impairment. *Id.*; *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the individual is not presumptively disabled, the ALJ then considers the individual's residual functional capacity (RFC), which means the most work the claimant can still do despite his or her impairments based on all the relevant medical and other evidence in the record. At this step, the ALJ also considers whether the individual can still perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1545(a); 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the individual can perform "any other work." *Id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). The claimant bears the burden of proof at steps one through four. *Butts*, 388 F.3d at 380-81. At step five, there is "a limited burden shift to the Commissioner," requiring her to show only "that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Applying the sequential framework, the ALJ found that Latterell had not engaged in substantial gainful activity since his alleged disability onset date. (AR 483.) She determined that Latterell had the following severe medically determinable impairments: degenerative disc disease, diabetes mellitus, and alcohol abuse in sustained remission. (AR 484.) She noted that Latterell had been diagnosed with a depressive disorder, but found it to be nonsevere. (AR 484.) The ALJ determined that neither Latterell's back issues nor his diabetes met the criteria for a listed impairment. (AR 487-88.)

The ALJ found that Latterell had the RFC to perform sedentary work. She found that he could lift and carry up to ten pounds and could sit, stand or walk for up to six hours in an eight-hour workday, but must be able to alternate positions from sitting to standing approximately every twenty minutes to alleviate pain. She found that he could perform unlimited pushing and pulling, is able to climb stairs, ramps, ladders, ropes and scaffolds occasionally, is able to balance, stoop, kneel, crouch and crawl frequently, and had no manipulative, visual, communicative, or environmental limitations. (AR 488.)

The ALJ found that with this RFC, Latterell could not perform any of his past relevant work. (AR 494.) However, she determined that there were other jobs that exist in significant numbers in the national economy that Latterell could perform, including repair order clerk, sorter, and telephone answering service operator. (AR 495.) She therefore concluded that Latterell was not disabled from the alleged onset date through the date of her decision. (*Id.*)

### IV. Standard of Review

This court reviews the administrative record *de novo* to determine whether the Commissioner's decision is supported by "substantial evidence" and uses the correct legal standard. *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore*, 566 F.3d at 305 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where there is substantial evidence to support either position, the determination is one to be made by the factfinder. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). In reviewing a decision of the Commissioner, this court must be mindful of the remedial purpose of the Social Security Act. *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

### V. Analysis

On appeal, Latterell argues that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Adams. Specifically, he argues that the ALJ failed to discuss Dr. Adams's opinions that Latterell needed to periodically stand and walk around to relieve his pain, that he was limited in doing reaching and handling activities for less than one-third of the workday, and that he would need more than ordinary rest breaks during the day. If the ALJ had

included any of these limitations in Latterell's RFC, he argues, Latterell would be found disabled.

A treating physician's opinion on the nature and severity of a claimant's condition normally is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(c)(2). When the treating physician's opinion is not given controlling weight, the ALJ must consider "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ must give "good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)(ii); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008).

Dr. Adams was Latterell's treating physician from February 2010 to June 2011. Latterell visited Dr. Adams regularly during that period. (AR 377, 380, 383, 386, 389, 441.) On July 19, 2010, Dr. Adams filled out a form entitled "Medical Source Statement of Ability to Do Work-Related Activities" in which he checked boxes indicating that Latterell's impairments and associated pain would cause "extreme" limitations in his ability to concentrate on work-related tasks and would require him to take more than the ordinary number of rest breaks during the course of a workday. He opined that Latterell could occasionally lift and carry less than ten pounds, could stand or walk for less than two hours in an eight-hour workday, could sit for about one hour in an eight-hour workday, and must stand and walk around periodically to relieve pain, shifting positions approximately every twenty minutes. (AR 430.) He opined that Latterell's ability to push and pull with his upper extremities was limited, and that he could never climb, balance, kneel, crouch, crawl, stoop or bend. (AR 431.) He further indicated that Latterell was limited in his ability to reach and handle in that he could do either activity for less than one-third of the workday before exacerbating his medical conditions. (AR 431-32.) Finally, he opined that Latterell would likely be absent two to three times per week due to his back pain. (AR 432.) The ALJ accorded Dr. Adams's opinion "limited weight." (AR 492.)

5

The ALJ gave good reasons for discounting Dr. Adams's opinion. *See* 20 C.F.R. § 404.1527(c)(2)(ii). While recognizing that Dr. Adams was a treating source "who has had the opportunity to treat [Latterell] for an extended period of time," the ALJ found Dr. Adams's assessment of Latterell's postural and exertional limitations to be inconsistent with Dr. Adams's own notes and other medical evidence in the record. (AR 492.) The ALJ reasoned that Dr. Adams's own notes indicated that Latterell was active and doing well. She noted that Latterell consistently was found to have normal strength and sensation in his lower extremities. She found that Dr. Adams's assessment of extreme limitations conflicted with Latterell's ability to care for his own personal needs without assistance, prepare some meals, and do laundry. She pointed to a treatment note from May 2010 stating that Latterell was very active in the heat all day.[1] In addition, she found Dr. Adams's assessment to be inconsistent with the fact that Latterell was able to work in the kitchen and to perform part-time work as a cleaner in the correctional facility. The ALJ noted that a more recent opinion by agency consulting examiner Geoffrey Knisely, who reviewed Latterell's medical records in April 2011, found that Latterell was capable of sedentary work. Finally, the ALJ noted that Dr. Adams's assessment dated from July 2010 and that "updated medical records and evidence with regard to the claimant's overall level of daily functioning" contradicted his assessment. (AR 493.)

These reasons are supported by the record. First, Dr. Adams's own notes do not support his assessment that Latterell's functioning was severely limited due to back pain. On May 5, 2010, Dr. Adams stated that Latterell "is relatively young and seems to be doing well without [long-term opiates]. He is doing exercise, engaged in activities etc." (AR 381.) On June 16, 2010, Dr. Adams noted that Latterell's "[s]pine is positive for posterior tenderness" but that "overall this [patient] is doing quite well—getting out of the house, involved in community, no mood symptoms." (AR 379.) No mention is made of reaching and handling limitations. An

---

[1] Latterell objects that this note was not indicative of voluntary activity or more than an isolated occurrence. The note states that Latterell visited the emergency department for hypoglycemia. (AR 406.) Latterell reported that he had "[eaten] dinner late due to car issue very active in heat all day and quickly got low" and that he "missed dinner due to [his] car [being] out of gas and [was] very active while fixing the issue." (*Id.*) The ALJ did not err in relying on this note. While demonstrating that Latterell's diabetes could be exacerbated by exertion, the note makes no mention of back pain or other related symptoms arising from such exertion. Thus, it supports an inference that Latterell's functioning was not as limited by his back trouble as Dr. Adams opined.

ALJ is not required to give controlling weight to a treating physician opinion where the physician's opinion conflicts with his own treatment notes. *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013).

Second, Dr. Adams's assessment of extreme limitations in functioning conflicts with Latterell's other medical records. In October 2008, Latterell visited family practitioner Dr. David Lisle complaining of a sudden onset of low back pain following "a twisting injury while doing some heavy lifting." (AR 194.) Lisle observed that Latterell had tenderness to his left paralumbar musculature and his range of motion was significantly limited, although he had full range of motion and normal sensation in his lower extremities. (*Id.*) Dr. Lisle prescribed ibuprofen and physical therapy. (*Id.*)

In March 2009, family practitioner Dr. Robert Luebbers examined Latterell and found that his gait was normal and his motor functioning and sensation were intact. (AR 193, 197.) Dr. Luebbers prescribed ibuprofen for Latterell's back pain and did not recommend narcotics. (*Id.*) He referred Latterell to a neurosurgeon, Dr. Michael Horgan, who examined Latterell in April 2009 and diagnosed him with "low back pain and bilateral leg pain." (AR 352.) Dr. Horgan found that Latterell's gait was "somewhat antalgic" and that he had a limited range of motion at the waist, but tandem gait and heel walking were performed well. (AR 351-52.) He did not think Latterell was a surgical candidate, instead recommending "conservative management of these problems to include . . . physical therapy, regular walking regimen, and ongoing consultation with pain management." (AR 352.)

Through a referral initiated by Dr. Adams, Dr. Martin Krag, an orthopedic surgeon, saw Latterell on June 9, 2010. He noted that Latterell's gait was normal. (AR 372.) He reviewed MRI images of Latterell's lumbar spine region, which showed "mild degenerative changes at L4-5, to a lesser extent at L5-S1. There is wedging at L2 and mild posterior disk bulging of the L2-3 disk." (*Id.*) In his assessment, a "[m]usculoligamentous or tendinous source for the back pain is most likely." (AR 373.) He did not think surgical intervention would help, but "an appropriately intensive functional restoration program would be helpful." (*Id.*) Notably, he recommended "no specific activity restrictions." (*Id.*)

The numerous medical records from Latterell's incarceration beginning in September 2011 contain little mention of Latterell's back condition or any associated reduction in functioning. Most of Latterell's prison medical records relate to treatment of his diabetes as well as treatment for anxiety, depression and sleep disturbance. Periodic checkup reports do not mention any limited functioning related to his back pain. (AR 855, 913, 952.) In April 2012, Latterell received a medical clearance to participate in a work camp program. The clearance form states that "physical conditions precluding work camp" include "[a]ny acute or chronic musculoskeletal condition that could be aggravated or worsened by performing work camp duties." (AR 1106.) In May 2012, Latterell was prescribed Tylenol for two days after he pulled a muscle while running during a softball game. (AR 1073.) In January 2013, he was noted to have normal gait and sensation in his lower legs, and reported performing his activities of daily living "ok." (AR 832.)

Overall, the medical evidence shows that Latterell was generally able to function despite his back pain. There is minimal support for Dr. Adams's assessment that Latterell was severely limited in his ability to do sedentary work even if given a sit/stand option. In light of this conflicting medical evidence, the ALJ was not required to give Dr. Adams's RFC assessment controlling weight. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Because the ALJ properly found Dr. Adams's opinion as a whole to be of limited weight, she was not required to address and refute each of the specific limitations identified by Latterell in his appeal. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Latterell also argues that the ALJ erred by giving "substantial weight" to the opinion of agency consulting physician Geoffrey Knisely, because Dr. Knisely did not consider the entire medical record in rendering his opinion. *See Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir.

2011). It is unclear whether Dr. Knisely considered Dr. Adams's medical source statement in forming his opinion of Latterell's RFC. It seems likely that he did not, because he stated that there was no medical opinion evidence in Latterell's file. (AR 503.)

Although it would ordinarily be reversible error for the ALJ to accord substantial weight to the opinion of a consultative examiner who did not review an opinion from the treating physician, *see Tarsia*, 418 F. App'x at 18, in this case any error was harmless. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration."). As discussed above, Dr. Adams's RFC assessment was unsupported by his own treatment notes and the other medical evidence in the record. It is likely that Dr. Knisely would have discounted it for that reason. Further, Dr. Knisely's opinion is consistent with Latterell's other relevant medical records, including the records from Drs. Luebbers, Horgan, and Krag.[2] *See Leach ex rel. Murray v. Barnhart*, No. 02 civ. 3561 RWS, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *see also* 20 C.F.R. § 416.927(e)(2)(i).

---

[2] Latterell argues that Dr. Knisely incorrectly stated that Latterell has a normal gait. He cites a May 2010 note by Robert Hemond at the Spine Institute, in which Hemond observed Latterell to have a mildly antalgic gait with some limitation in strength. (AR 375.) However, both prior to and after Hemond's note, physicians observed Latterell to have normal gait and normal reflexes and sensation in his lower extremities. Dr. Knisely therefore did not inaccurately characterize the evidence in his report. Further, as a physician assistant, Hemond was not an "acceptable medical source" in the way that term is defined by the Commissioner's regulations. *See* 20 C.F.R. § 404.1513(a); SSR 06-03p. It was not improper for Dr. Knisely to give more weight to the observations of the various physicians than Hemond's observation.

## VI.     Conclusion

The court DENIES plaintiff's motion (Doc. 12) and GRANTS the Commissioner's motion (Doc. 13). The decision of the Commissioner is affirmed.

Dated at Rutland, in the District of Vermont, this 11th day of March, 2015.

Geoffrey W. Crawford, Judge
United States District Court